UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **ADVANCED TRAINING GROUP WORLDWIDE, INC.** | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 1:19-cv-00505-TSE-TCB ) |
| **PROACTIVE TECHNOLOGIES, INC.** | ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF DAMAGES AND ITS ACCOMPANYING MEMORANDUM IN SUPPORT**

Plaintiff, Advanced Training Group Worldwide, Inc. ("ATG" or "Plaintiff"), by and through its undersigned counsel and pursuant to this Court's Scheduling Order, files this Response in Opposition to Defendant, Pro Active Technologies, Inc.'s ("ProActive" or "Defendant") Motion *In Limine* to Preclude Evidence of Damages and its accompanying Memorandum in Support (collectively, "MIL"). ATG should not be precluded from introducing evidence relating to any claimed damages for the following reasons:

In Defendant's MIL, it requests exclusion of all evidence of damages, including any testimony that may relate alleging that they will suffer prejudice otherwise. Defendant seeks exclusion of testimony and evidence regarding ATG's lost profits arising from: (1) Defendant's breach of contract, (2) ATG's resulting loss of enterprise value, (3) and ProActive's unjust enrichment at ATG's expense. Defendant breached the terms of the Memorandum of Understanding ("MOU"), which operated as a *de facto* operating agreement for the parties' joint venture, when they illegally ousted ATG from Raptor Training Services ("RTS"), and now seeks

1

to exclude any and all evidence and testimony connected with its breach. Specifically stated, but for Defendant's breach of contract and tortious interference, ATG would have been able to capitalize on substantial business opportunity and to earn profits from performing numerous task orders within ATG's competencies that should have been allocated to ATG under the terms of the MOU.

In Plaintiff's Complaint, Plaintiff requested a Jury Demand for "damages, including punitive damages, direct and consequential damages, in an amount to be proven at trial." Docket at 1. ProActive itself cited that a "[a] motion in limine to exclude evidence … should be granted only when the evidence is clearly inadmissible on all potential grounds. *U.S. v. Verges*, No. 1:13-cr-222, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014). Here, ATG asserted causes of action sounding in both contract and tort, and is thus entitled to present evidence of damages, and based on the following reasons there is no basis for excluding such evidence. In fact, preclusion of such evidence would result in grave prejudice to Plaintiff's well asserted claims as previously stated in Plaintiff's Response to Defendant's Motion for Summary Judgment. See Plaintiff's Statement of Genuine Issues and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (D.E. 132).

## I.  ATG Disclosed Evidence That Supports Its Claimed Damages

Defendant's position is that ATG has failed to produce any evidence that legally supports its claimed damages. Docket 213 at 1. Therein, Defendant proclaims that "ATG failed to provide any evidence of **any** expenses ATG would have incurred on the Task Orders it claimed it should have received." (Doc. 213, at 6) (emphasis added). However, ProActive's position is belied by the very documents in its possession. ProActive takes issue with ATG's alleged inability to pinpoint exact costs of future, not yet incurred, expenses on task orders that would have been in ATG's

"wheelhouse" but for ATG's illegal termination from RTS. From the October 18, 2019 production, Plaintiff produced documents Bates stamped ATG-23000–23480, which contained ATG invoices to RTS for labor and other expenses. Furthermore, the aforementioned Bates ranges contained QuickBooks reports, which detailed expenses, including *inter alia* 1099-labor, subcontractor payments, per diems, rental cars, plane tickets, fuel, baggage, and expense reports for ATG employees. Therefore, Plaintiff has produced and Defendant is in possession of documents which show typical expenses and costs associated with previously performed task orders. Furthermore, Plaintiff is only required to provide a calculation method to Defendant, it is not required to produce its related work product.

In ATG's response to Interrogatory No. 2, Plaintiff provided a calculation which explicitly stated that its profit stemmed from the "revenue that would have been received by Plaintiff under the terms of the contract/task orders *minus* the third-party expenses it would have paid to perform such contracts/task orders." (Doc.73, at 21). Yet, Defendant still claims ATG should be precluded from presenting evidence relating to damages suffered because "[r]evenue is not a proper method of damages". (Doc 213, at 6). In support, Defendant cites the *Fairways Corp. v. Johnmark Const. Inc.* case, which is highly distinguishable from the case at bar. 343 S.E.2d 90 (VA. 1986). The *Fairways* court overturned an award of loss profits, because the president of company claiming breach was unable to "recall his estimates and had no documents or records to indicate his per unit expenses." *Id*. Here, ATG has produced documents explicitly relating to expenses incurred on previous task orders. Additionally, Adam Newbold, ATG's founder and chief executive, was never questioned on this issue in his 30(b)(6) deposition. Rather, Defendant asked him questions relating to ATG's damages during his personal deposition where he was not on notice to study up and review the corporate documents.

3

The *Fairways* Court additionally took issue with the fact that the president of the company alleging breach stated that the 15% profit calculation that he gave was nowhere in the contract, but rather that is simply what the president anticipated he could make. *Id*. Here, there is no such issue. Defendant's own 30(b)(6) representative, Richard Stockton, testified in deposition regarding the profits on the various task orders that "[t]he fee associated with the task order, which is either 5 or 6 percent, **as defined by contract**, would go to the task order lead." Exhibit 1. (emphasis added). Mr. Stockton further went on to explicitly state that by the IDIQ itself, "the fee is set, the profit is set." Exhibit 1.

ProActive was not only on notice by the terms of the contract itself, with regard to the profit ATG stood to enjoy, but ATG has additionally produced documents relating to its profit and expenses associated with task orders rather than simply stating that it is entitled to all revenue projected.

## II. ATG Does Not Need an Expert Witness to Establish Its Claimed Damages

Defendant believes that ATG should further be prohibited from using any lay witness in trial to testify to its claimed damages, because ATG allegedly failed to identify any such witness. This is not the case. In Plaintiff's Initial 26(A)(1) Disclosure (Doc. 102-6) it identified Adam Newbold, Scott Loveland, Michael Ecker, Timothy Hickman, Justin Cestaro, and Erik Demming as "current or former executives of [ATG}." ATG further stated that the aforementioned individuals have personal knowledge surrounding the facts and circumstances of the case. Specifically, ATG stated among other things that their knowledge includes, but is not limited to, the capacity of both ATG and ProActive necessary to win and ultimately perform under the SOF RAPTOR III contract, ATG's ability to perform and operate as lead on task orders, ATG's termination from RTS, ProActive's interference with ATG's contractual relationships, and "other

facts that may be relevant to the issues in this action." *Id.*

The facts and circumstances of this case and the issues in this action directly relating to the breach of contract would include the ensuing damages suffered by ATG. Defendant has been on notice since the inception of this case that ATG believes it is entitled to just compensation connected with Defendant's improper actions. In addition, Defendant belie its own arguments quoting *Steves & Sons, Inc. v. JELD-WEN, Inc*, that "company officials may estimate future profits or losses as a lay witness if the estimates are based on personal experience." No. 3:16-cv-545, 2-18 WL 395479, at *2 (E.D. Va. Jan 10, 2018) (internal citations omitted).  Despite this fact, Defendant failed to question ATG's duly-appointed 30(b)(6) representative in his deposition concerning the company's claimed damages.

Nevertheless, Defendant's position is that Timothy Hickman should not be permitted to testify as to the damages claimed, specifically putting emphasis on the fact that he is a former employee, not an executive, and worked for ATG for approximately seven months. Defendant's position is unsupported by case law. The authority cited by Defendant explicitly states that "future projections of a business or operation come from someone who has intimate and thorough knowledge of the business gathered from a lengthy tenure or a position of authority." *Id.* Mr. Hickman was explicitly listed in ATG's Initial Disclosures as someone with personal knowledge. Furthermore, although Mr. Hickman never officially held the title of an executive of ATG, it is abundantly clear from his deposition that he held "a position of authority" and was a confidant and consultant for Mr. Newbold – CEO of ATG.

Assuming arguendo that Mr. Hickman was precluded from providing any testimony relating to ATG's claimed damages, Defendant seems to have overlooked the vital fact that Mr. Newbold is capable of testifying as the corporate representative as to ATG's financial posture and

claimed damages. Not only was Mr. Newbold listed as an executive in ATG's Initial Disclosures, but Mr. Newbold was properly designated as ATG's 30(b)(6) representative[1] and also possesses sufficient "intimate and thorough knowledge of the business". *Id.*

### III.     Conclusion

For the foregoing reasons, Plaintiff Advanced Training Group Worldwide, Inc., respectfully requests that this Honorable Court DENY Defendant's Motion *In Limine*, requesting that ATG be prohibited from presenting any damages-related testimony or evidence at trial.

DATED: April 16, 2020                    Respectfully Submitted,

ADVANDED TRAINING GROUP WORLDWIDE, INC., Plaintiff, *By and Through Counsel:*

**WHITCOMB, SELINSKY, PC**

By:      /s/
SUSAN A. AUSTIN (VSB No. 81333)
JOSEPH A. WHITCOMB, *Pro Hac Vice*
ARRON B. NESBITT, *Pro Hac Vice*
2000 S. Colorado Blvd. Tower One, Suite 9500
Denver, CO 80222
[T](303)534-1958; [F](303)534-1949
joe@whitcomblawpc.com
arron@whitcomblawpc.com
susan@whitcomblawpc.com

**P.M. DUBBELING, PLLC**
By:      /s/
PAUL M. DUBBELING, *Pro Hac Vice*
210 North Columbia Street
Chapel Hill, NC 27514
[T](919)635-6005; [F](919)404-7074
Paul.dubbeling@pmdubbeling.com
*Counsel for Plaintiff*

---

[1] Note, Defendant's own notice of deposition and designated categories of testimony for ATG's 30(b)(6) deposition included discovery responses provided by ATG, which clearly would have included ATG's computation of damages. Nevertheless, Defendant failed to ask any questions on that subject during the deposition. See Exhibit 2.

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of April 2020, I will electronically file the foregoing with the Clerk of Court using the CM/EMF system, thereby providing notification of such filing (NEF) to all counsel of record:

Jeffrey S. Poretz, VSB No. 38529
Laura Golden Liff, VSB No. 80618
C. Peter Dungan, *Pro Hac Vice*
Rachel T. McGuckian, *Pro Hac Vice*
MILES & STOCKBRIDGE, PC
1751 Pinnacle Drive, Suite 1500
Tysons Corner, VA 22102
[T] (703)610-8651; [F] (703)610-8686
jporetz@milesstockbridge.com
lliff@milesstockbridge.com
pdungan@milesstockbridge.com
rmcguckian@milesstockbridge.com
*Counsel for Defendant*

By: /s/ *Susan A. Austin*
SUSAN A. AUSTIN (VSB # 81333)