**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **ADVANCED TRAINING GROUP** | ) | |
| **WORLDWIDE, INC.,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 19-cv-505** |
| | ) | |
| **PROACTIVE TECHNOLOGIES INC.,** | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

At issue in this dispute between two former joint venture partners are the parties' various motions *in limine.* This case is proceeding to trial on a single breach of contract claim. Specifically, plaintiff Advanced Training Group Worldwide, Inc. ("ATG") has sued defendant ProActive Technologies, Inc. ("ProActive"), alleging that ProActive breached the Memorandum of Understanding ("MOU") between the parties to form a joint venture, Raptor Training Services, LLC ("RTS" or the "JV"), when ProActive terminated ATG from the JV.

In advance of trial on ATG's breach of contract claim, ProActive has filed two motions *in limine* and ATG has filed three motions *in limine.* ProActive's motions *in limine* are:

- (1) A motion *in limine* to preclude ATG from introducing any evidence relating to any claimed damages.

- (2) A motion *in limine* to preclude expert testimony from ATG's rebuttal expert John M. Falk pursuant to Rule 702, Fed. R. Evid.

ATG's motions *in limine* are:

- (3) A motion *in limine* to preclude any reliance by ProActive on the Business Judgment Rule or the Advice-of-Counsel defense.

- (4) A motion *in limine* to preclude expert testimony from ProActive's expert James A. Hughes, Jr. to the extent that it offers impermissible legal opinions.

- (5) A motion *in limine* to preclude certain testimony from Adam Newbold pursuant to Rule 403, Fed. R. Evid.

1

For the reasons that follow,

- (1) ProActive's motion *in limine* to preclude ATG from introducing any evidence relating to any claimed damages must be granted.

- (2) ProActive's motion *in limine* to preclude expert testimony from ATG's rebuttal expert John M. Falk must be granted in part and denied in part.

- (3) ATG's motion *in limine* to preclude any reliance by ProActive on the Business Judgment Rule or the Advice-of-Counsel defense must be granted.

- (4) ATG's motion *in limine* to preclude expert testimony from ProActive's expert James A. Hughes, Jr. must be granted in part and denied in part.

- (5) ATG's motion *in limine* to preclude certain testimony from Adam Newbold must be deferred until trial.

## I.

Before analyzing the parties' motions *in limine*, it is important to summarize the pertinent factual and procedural history of this case. Plaintiff and defendant entered into a Memorandum of Understanding ("MOU") in July 2012 to form a Virginia limited liability company, Raptor Training Services, LLC ("RTS" or the "JV"), in order to bid on a multi-million-dollar indefinite duration, indefinite quantity ("IDIQ") government contract with the United States Army. Although the parties formed RTS in August 2012, won the government contract in February 2014, and began executing task orders under the government contract, they never reached agreement on a formal written operating agreement for the JV. As a result, the MOU became the *de facto* operating agreement for the JV. In the end, ProActive terminated ATG from the JV in November 2016 because ProActive alleged that ATG was in material breach of the MOU.

On April 24, 2019, ATG filed its initial complaint in this matter, and on June 12, 2019, ATG filed a First Amended Complaint ("FAC") pursuant to Rule 15(a)(1)(B), Fed. R. Civ. P. The FAC alleges six claims against ProActive: Breach of Contract (Count I); Tortious Interference with Contract (Counts II-IV); Interference with Contract Expectancy (Count V); and Unjust

2

Enrichment (Count VI).[1] On June 26, 2019, ProActive filed an Answer to the FAC, and shortly

thereafter the parties began discovery.

Several discovery disputes arose between the parties, and the disposition of those discovery

disputes is relevant to some of the motions *in limine* at issue. Specifically, on November 9, 2019,

the Magistrate Judge granted ProActive's motion to strike ATG's three expert designations[2]

pursuant to Rule 37(c)(1), Fed. R. Civ. P., because ATG's expert designations did not meet the

standard required by Rule 26, Fed. R. Civ. P. *See* Order Granting Defendant's Motion to Strike

Plaintiff's Expert Designations, Dkt. 42. ATG filed an objection to the Magistrate Judge's

November 9, 2019 Order, and on December 9, 2019, an Order issued affirming in part the

Magistrate Judge's Order. *See Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*,

No. 19-CV-505, 2019 WL 8886229 (E.D. Va. Dec. 9, 2019). Specifically, the December 9, 2019

Order affirmed the Magistrate Judge's Order striking ATG's government contracting and joint

venture experts, but deferred ruling on ATG's objection to the Magistrate Jude's Order striking

ATG's damages expert because that issue was inadequately briefed. *See id.* at *4-5. The parties

submitted supplemental briefs addressing the importance of ATG's damages expert, and the matter

was remanded to the Magistrate Judge for further consideration on January 2, 2020. *See* Remand

Order, Dkt. 99.

On January 10, 2020, the Magistrate Judge again ordered ATG's damages expert stricken,

and ATG again filed objections to the Magistrate Judge's Order. *See* Magistrate Judge's Order

Striking Plaintiff's Damages Expert Designation, Dkt. 124; Plaintiff's Objections to Magistrate

---

[1] On April 17, 2020, summary judgment was granted in favor of defendant on Counts II-VI. *See Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 1904074, at *1 (E.D. Va. Apr. 17, 2020).

[2] Plaintiff's three expert designations were for (i) a government contracting expert, (ii) a joint venture expert, and (iii) a damages expert.

3

Judge Order, Dkt. 147. On January 29, 2020, an Order issued affirming the Magistrate Judge's January 10, 2020 Order striking ATG's damages expert. *See Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 2738381 (E.D. Va. Jan. 29, 2020). Specifically, the January 29, 2020 Order held that the Magistrate Judge's conclusions in the January 10, 2020 Order—namely (i) that ATG's damages expert designation did not meet the standard required by Rule 26, Fed. R. Civ. P., and (ii) that application of the five-factor test set forth in *Southern States Rack & Fixture, Inc. v. Sherwin Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) pointed persuasively to the conclusion that exclusion of ATG's damages expert was the appropriate remedy under Rule 37(c), Fed. R. Civ. P.—were neither clearly erroneous nor contrary to law.[3] *See Proactive Techs. Inc.*, 2020 WL 2738381, at *1-3. The result of this protracted litigation of plaintiff's damages expert designation is that ATG is precluded from offering expert testimony on damages at trial. But importantly, ATG's counsel represented throughout the litigation of the inadequate expert designation issue that damages expert testimony was not necessary to ATG's case and that ATG could and would provide damages evidence through lay witnesses and documentary evidence.[4]

Following the close of discovery, on December 30, 2019, ProActive filed a motion for summary judgment on all of ATG's claims, and ATG filed a cross-motion for summary judgment

---

[3] ATG then moved for a 28 U.S.C. § 1292(b) certification for an interlocutory appeal of the January 29, 2020 Order that affirmed the Magistrate Judge's January 10, 2020 Order striking ATG's damages expert. On March 13, 2020, an Order issued denying ATG's motion for a 28 U.S.C. § 1292(b) certification because ATG's motion failed to meet all three requirements of § 1292(b), namely the order ATG sought to appeal (1) did *not* involve a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal from the order would *not* materially advance the ultimate termination of the litigation. *See* Order Denying Motion for Interlocutory Appeal, Dkt. 234, at 2.

[4] *See Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 2738381, at *2 (E.D. Va. Jan. 29, 2020).

with respect to two issues relevant to ATG's breach of contract claim in Count I.[5] On April 17, 2020, a Memorandum Opinion and Order issued that denied ATG's motion for partial summary judgment on Count I, denied ProActive's motion for summary judgment with respect to Count I, and granted ProActive's motion for summary judgment with respect to Counts II-VI. *See Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 1904074, at *1 (E.D. Va. Apr. 17, 2020). Accordingly, the matter is set to proceed to trial solely on ATG's breach of contract claim in Count I.

In Count I, the FAC alleges that ProActive breached the JV's MOU when ProActive unilaterally terminated ATG from the JV on November 8, 2016. With respect to Count I, the undisputed facts in the summary judgment record establish that ATG and ProActive executed the MOU for the RTS JV on July 27, 2012.[6] Generally, a memorandum of understanding is merely an agreement to agree under Virginia law and is thus unenforceable in a breach of contract action.[7] But here because ATG and ProActive formed the contemplated JV, won the government contract for the JV, and began performing the government contract as JV partners without executing a formal written operating agreement, the MOU became the *de facto* operating agreement for the

---

[5] Specifically, ATG sought judgment as a matter of law (1) that the RTS MOU termination provision does not provide ProActive the unilateral right to dissociate ATG from the RTS JV and (2) that ATG never materially breached the RTS JV's MOU.

[6] Memorandum of Understanding between ATG and ProActive, Dkt. 136-1. Notably, one month prior to the MOU's execution, on June 25, 2012, ATG's CEO emailed ProActive's CEO regarding the Draft MOU and stated, "[r]egarding RAPTOR: The MOU looks ok. It's been pointed out frequently how you'll basically have control to cut us out or do whatever you wish. I'm actually okay with that. As far as I'm concerned, we are riding your coat tails on this one." ProActive's CEO responded to ATG's CEO and stated: "As for RAPTOR—yes ProActive would control the organization." ATG's CEO then responded: "Thanks Bob. That is how I understand and agree to work things." Email Communications between Adam Newbold and Bob Acevedo, Dkt. 75-4, at 2-3. And three days after the MOU was executed, ATG's CEO emailed his ATG employees and stated: "There is plenty of risk that once the contract is awarded, ProActive could decide they want to use someone else to fulfil the tactical requirements." Email Communications between Adam Newbold and Bob Acevedo, Dkt. 75-6, at 3.

[7] *See Meridian Investments, Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 580 (4th Cir. 2017) ("Letters of intent and memoranda of understanding are generally unenforceable 'agreement[s] to agree' under Virginia law.") (citing *W.J. Schafer Assocs., Inc. v. Cordant, Inc.*, 254 Va. 514, 519 (1997)).

JV.[8] Indeed, although the parties dispute the meaning of certain provisions of the MOU and whether one or the other party breached the terms of the MOU, neither party disputes that the MOU was the *de facto* operating agreement of the JV.

With respect to termination, the MOU provides that a JV member can be terminated from the JV for its breach of the MOU, but the MOU does not specify the process by which the JV member can be terminated. Specifically, Section 20.0 of the MOU states in relevant part: "If a Member…is terminated from the JV for its breach of this MOU or the JV governing documents, the remaining Member(s) will be entitled to purchase the terminating Member's interest in the L.L.C. on a basis proportional to their membership interests, for a total price of $1,000."[9] Although this provision contemplates termination of a JV Member, it does not specify what constitutes a breach of the MOU.

In this case, the parties moved forward with the JV under the terms of the MOU. On February 13, 2014, the U.S. Government awarded the SOF RAPTOR III Contract to the RTS JV, and RTS accepted the contract award.[10] The parties then began to perform task orders under the SOF RAPTOR III Contract. Beginning in March 2016, ATG and ProActive finally entered negotiations on a formal written operating agreement to govern the JV. On November 8, 2016, after months of failed negotiations on a formal written JV operating agreement,[11] ProActive sent

---

[8] *See id.* ("[P]arties can include binding provisions in a MOU so long as there is 'mutual assent of the contracting parties to terms reasonably certain under the circumstances to have an enforceable contract.'") (citing *Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364 (1981)).

[9] Memorandum of Understanding between ATG and ProActive, Dkt. 136-1, at 11.

[10] Although the MOU contemplates the execution of a JV operating agreement upon the award of the SOF RAPTOR III Contract to RTS, the parties never executed a formal written operating agreement for the JV.

[11] For additional detail on the parties' failed negotiations on a formal written JV operating agreement, see the recitation of material facts in the summary judgment Memorandum Opinion, specifically Material Facts 11-23. *See Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 1904074, at *3-5 (E.D. Va. Apr. 17, 2020). There were two main disputes between ATG and ProActive during the JV operating agreement

ATG a letter titled "Termination of ATG for material breach of Memorandum of Understanding" (the "Termination Letter"). The Termination Letter states that ProActive is terminating ATG from the RTS JV because of ATG's "prolonged refusal to operate in accordance with the MOU, including without limitation, its repeated demand for a fifty-fifty share of voting rights and membership interests in [RTS] in contravention of the MOU."[12] The Termination Letter also states that ATG has refused to execute an operating agreement that adds Class B Members to the JV. After ProActive terminated ATG from the JV, on December 22, 2016, ProActive, Oak Grove Technologies, LLC ("Oak Grove"), and F3EA, Inc. ("F3EA") executed a document titled "Operating Agreement of Raptor Training Services, L.L.C." that lists ProActive as the sole Class A Member of RTS and Oak Grove and F3EA as Class B Members of RTS.

As noted, over two years later on April 24, 2019, ATG filed the instant lawsuit against ProActive alleging that ProActive breached the MOU when ProActive unilaterally terminated ATG from the JV on November 8, 2016.

## II.

With this factual and procedural history as background, it is appropriate now to address the parties' various motions *in limine*. First, ProActive has filed a motion *in limine* to preclude ATG from introducing any evidence relating to any claimed damages at trial because (i) ATG failed to disclose any evidence that would support any legally viable measure of damages; (ii) ATG lacks

---

negotiations. First, ATG took the position that because ProActive and ATG had an equal number of seats on the RTS Board of Directors (three each), ATG was entitled to 50% voting rights and equal decision-making authority. In contrast, ProActive took the position that to the extent the RTS Board of Directors had any authority, board members voted in accordance with the MOU's stated division of voting interests, namely 67% ProActive and 33% ATG. Second, ATG believed that adding companies to the JV as Class B Members was not necessary to comply with FAR § 52.219-14 Limitations on Subcontracting (the "50% Rule"). In contrast, ProActive believed it was essential to add companies to RTS as Class B Members that were then serving as subcontractors in order to comply with the 50% Rule.

[12] November 8, 2016 Termination Letter, Dkt. 75-23, at 2.

any identified witness with the requisite foundation to opine on its claimed damages; and (iii)

ATG's failure to disclose such critical information was not justified and is prejudicial to ProActive.

ATG opposes ProActive's motion *in limine*, arguing that ATG has disclosed evidence that supports

its claimed damages and that ATG can use lay witnesses to testify to its claimed damages at trial.

Simply put, ATG *still* has not disclosed to ProActive (i) the amount of its claimed damages

or (ii) how ATG calculates its claimed damages. Because ATG did not disclose a proper damages

computation as required pursuant to Rule 26(a), Fed. R. Civ. P., ProActive's motion *in limine* must

be granted, and ATG will be precluded from introducing evidence related to any claimed damages

at trial.

It is first necessary to set forth the Federal Rules of Civil Procedure applicable to this

damages evidence dispute. In this respect, Rule 26(a)(1)(iii), Fed. R. Civ. P., states that a party

must provide to the other parties:

> a computation of each category of damages claimed by the disclosing party--who
> must also make available...the documents or other evidentiary material...on which
> each computation is based, including materials bearing on the nature and extent of
> injuries suffered.

Rule 26(a)(1)(iii), Fed. R. Civ. P. And Rule 37(c)(1), Fed. R. Civ. P., provides that:

> If a party fails to provide information or identify a witness as required by Rule 26(a)
> or (e), the party is not allowed to use that information or witness to supply evidence
> on a motion, at a hearing, or at a trial, unless the failure was substantially justified
> or is harmless.

Rule 37(c)(1), Fed. R. Civ. P. In other words, a plaintiff must disclose to the defendant a

computation of each category of damages claimed pursuant to Rule 26(a), and if a plaintiff fails to

provide that damages computation, Rule 37(c) provides that exclusion of such evidence is the

appropriate remedy, unless the failure to disclose is harmless or was substantially justified.

For a party to satisfy its obligations under Rule 26, a party must provide a *computation* of

its damages. District courts have therefore correctly held that, where a party only discloses a lump sum or merely refers to documents from which the opposing party can presume damages, the disclosing party has not met its obligation. *See City & Cnty. of S.F. v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (holding that Rule 26 requires "more than a lump sum statement of the damages allegedly sustained"); *Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) (holding that defendants' disclosure of hundreds of pages of documents detailing the basis for defendants' damages claim did not satisfy Rule 26 for defendants' breach of contract counterclaim).

Here, ATG has failed to provide ProActive an appropriate computation of its claimed damages. In this respect, ATG provided the following supplemental response to ProActive's Interrogatories on August 30, 2019:

> Plaintiff contends that the damages occasioned by Defendant's refusal to allow Plaintiff to perform [the JV task orders] is the amount of revenue that would have been received by Plaintiff under the terms of the contract/task order minus the third-party expenses it would have paid to perform such contracts/task orders – **Plaintiff's anticipated revenue from each task order performed**. Plaintiff estimates that it would have performed approximately 20% of these contracts fully "in house" and 80% in conjunction with a third-party subcontractor. As shown on Attachment A, the total amount obligated pursuant to relevant task orders is $75,360,344.38. 20% of that figure is $15,072,068.88. Estimating revenue at 11% of contracts performed in conjunction with a third-party subcontractors [sic], the remaining contract/task orders yield revenue of $6,631,710.31 for initial damages claim of $21,703,779.18.

ATG's First Supplemental Responses to ProActive's Interrogatories, Dkt. 213-5, at 9. From this interrogatory response, it is clear that ATG seeks lost profits damages in the amount that ATG allegedly would have earned from the task orders performed by the JV after ATG was allegedly unlawfully terminated from the JV. But this damages calculation provided by ATG computes ATG's alleged lost *revenue*, not ATG's alleged lost *profits*.

In this respect, profit typically equals revenue less expenses/costs.[13] And the Supreme Court of Virginia has made clear that damages are recoverable for lost profits in breach of contract "only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." *TechDyn Sys. Corp. v. Whittaker Corp.*, 245 Va. 291, 298-99 (1993). Accordingly, "[l]ost profits that are speculative, remote, uncertain, or contingent are not recoverable." *Id.* at 299.

Here, the sole damages calculation that ATG has provided to ProActive is an improper calculation of lost profits because it calculates ATG's alleged lost revenues without subtracting ATG's expenses. *See, e.g., JTH Tax, Inc. v. Fein*, No. 2:08CV21, 2012 WL 3561659, at *2 (E.D. Va. Jan. 23, 2012) (holding that a damages award of gross receipts without subtracting costs would "be speculative and would lack factual foundation"). Specifically, ATG's damages calculation in its interrogatory response is the amount of revenue that ATG alleges it would have received from JV task orders less third-party expenses that ATG would have paid to perform those JV task orders. Importantly, ATG's damages calculation does not subtract the expenses that ATG would have to incur to perform these JV task orders.[14] Accordingly, ATG has failed to disclose a proper calculation of the amount of its claimed lost profits damages.[15] Because ATG has failed to disclose

---

[13] *See, e.g., Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 249 Va. 39, 49 (1995) (deducting incremental costs from estimated gross revenue to calculate lost profits); *VCA Cenvet, Inc. v. Chadwell Animal Hosp., LLC*, 552 F. App'x 217, 220 (4th Cir. 2014) ("The award of lost profits means the award of net, not gross, profits.").

[14] In this respect, the 20% of identified task orders that ATG asserts it would have performed "in-house" have no deduction for *any* expenses necessary to perform those task orders.

[15] At the telephonic hearing on the parties' motions *in limine*, ATG's counsel asserted, for the first time, that the word "revenue" was used in error in its interrogatory responses, that ATG corrected that error, and that its interrogatory response was a calculation of profits. ATG's counsel's assertion is plainly belied by the record. First, the record clearly demonstrates that ATG never corrected, in in any filing submitted in this case, any alleged error arising from the use of the term "revenue" instead of the term "profit" in ATG's interrogatory response on damages. Second, as the discussion above clearly demonstrates, the calculation provided in ATG's interrogatory response *was not a calculation of profit*. To be a proper calculation of profit, ATG's calculation *must* account for ATG's expenses to perform task orders. It is abundantly clear that ATG's expenses to perform the identified task orders were not

10

a proper calculation of damages at this late stage in the litigation and because ATG's failure to disclose this information is neither harmless nor substantially justified, ATG will be precluded from introducing damages evidence at trial.

Seeking to avoid this conclusion, ATG argues that it has provided documents to ProActive that show the typical expenses and costs that ATG incurred performing task orders prior to ATG's allegedly unlawful removal from the JV. This argument plainly fails; none of the tardily identified documents remedy the fatal defect in ATG's position. To begin with, the documents ATG relies on contain (i) resumes for various individuals, marketing materials, security clearance information, and an "employee database," all of which have no connection to the costs to perform task orders; (ii) paycheck records for six ATG employees that are not tied to any particular task order; and (iii) ATG's profit and loss statements and invoices, none of which is connected to any particular JV task order.[16] In other words, none of these documents provide a basis to calculate ATG's profit margin on JV task orders. Simply put, none of these tardily identified documents remedies ATG's failure to provide a "computation" of its claimed damages as required by Rule 26(a)(1)(iii), Fed. R. Civ. P.

It follows that the documents ATG has identified in its opposition to ProActive's motion *in limine* do not satisfy ATG's discovery obligations pursuant to Rule 26(a)(1)(iii), Fed. R. Civ. P. None of the documents ATG has identified calculate ATG's profit on any single task order. Thus, it is not possible on the face of these documents to determine either (i) ATG's historical profit percentage on ATG's performance of JV task orders or (ii) ATG's historical expenses related to its performance of JV task orders. Without this information, it is not possible to convert ATG's

---

accounted for anywhere in ATG's damages calculation.

[16] *See* Sealed Discovery Documents Identified in ATG's Opposition, Exhibits 2, 3, and 4 to ProActive's Reply Brief, Dkt. 262-2, 262-3, 262-4.

"anticipated revenue" calculation to a lost profits calculation. Even assuming, *arguendo*, that the necessary expense information is contained somewhere within ATG's general financial statements, ATG's mere reference to its general financial statements does not satisfy ATG's obligation to disclose a damages computation pursuant to Rule 26(a)(1), Fed. R. Civ. P.

In this respect, the Second Circuit's decision in *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) is instructive. In *Design Strategy*, the Second Circuit affirmed the trial court's exclusion of plaintiff's lost profits evidence where plaintiff argued that a computation of damages could be made from the financial records it turned over because:

> by its very terms Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; *it requires a "computation," supported by documents*. The need for computation and supporting documents is especially necessary in a case like this, where the damages claim is for lost profits from a project of a type with which the plaintiff had little-to-no prior experience. Design's "simple arithmetic" calculation is wholly inadequate as a measure of damages...At the late point in the proceedings when Design disclosed that it would be presenting lost-profits witnesses, much greater detail than previously provided would have been necessary to satisfy Rule 26(a).

*Id.* at 295 (emphasis added). This is precisely the situation here. ATG has never provided ProActive a proper computation of lost profits damages supported with documentation. Accordingly, it is clear that ATG has failed to satisfy its discovery obligations pursuant to Rule 26(a), Fed. R. Civ. P.

Indeed, ATG's argument that these tardily identified documents satisfy its discovery obligations also fails because ATG's opposition to ProActive's motion *in limine* is the first time that ATG has identified these documents as vital to its damages calculation. In fact, despite designating over 500 exhibits in its trial exhibit disclosure, ATG did not include a single document as a trial exhibit that ATG has now identified as vital to its damages calculation. ATG cannot use documents at trial that it did not timely identify in the discovery process and introduce as evidence

in its case-in-chief in order to meet its burden of proof to establish damages in a breach of contact action. Accordingly, it is abundantly clear that ATG's reliance on these tardily identified documents now does not fulfill its discovery obligations to disclose its damages computation to ProActive pursuant to Rule 26(a)(1)(iii), Fed. R. Civ. P.

It is also clear that the exclusion of damages evidence pursuant to Rule 37(c), Fed. R. Civ. P., is the appropriate remedy for ATG's failure to disclose a proper computation of damages in this case. The Fourth Circuit has set forth a five-factor test to guide a district court's determination of whether a party's failure to disclose information is substantially justified or is harmless, namely:

> (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Here, consideration of these factors points persuasively to the conclusion that ATG's failure to disclose a proper damages calculation is neither harmless nor substantially justified.

First, any revised damages calculation would clearly surprise ProActive at this stage of the litigation because ProActive has specifically requested this specific calculation throughout this litigation to no avail. In this respect, ProActive first requested information regarding ATG's damages calculation more than one year ago, when ProActive served interrogatories requesting all damages calculations on July 11, 2019. To date, ATG *still* has not provided an appropriate damages computation to ProActive, even in the face of this motion *in limine*. Instead, ATG continues to assert that it can present damages evidence through lay witness testimony at trial. But ATG did not identify a single witness to testify to its damages in its Rule 26(a)(1) disclosures.[17] Moreover,

---

[17] ATG asserts that it identified individuals that can testify to damages because it stated that certain individuals have knowledge of "other facts that may be relevant to the issues n this action." Plaintiff's Initial 26(a)(1) Disclosure,

the two witnesses who it appears ATG intends to call to testify as to damages at trial, Timothy

Hickman and Adam Newbold, testified at their respective depositions that they did not know

ATG's profit margin.[18] Accordingly, it is abundantly clear that ProActive would be surprised by

whatever damages testimony ATG intends to elicit at trial because ATG has not disclosed the

information required by Rule 26(a), Fed. R. Civ. P.

Second, discovery in this matter closed over eight months ago. Thus, there is no ability for

ATG to cure the surprise to ProActive without disrupting preparations for trial in this case. At this

point, both parties have already filed and had their motions for summary judgment ruled upon and

are now preparing for trial. If ATG were permitted to submit its damages calculation at this late

date, a damages calculation that ATG *still* has not proffered in any filing, ProActive would be

unable to challenge or investigate the computation without re-opening discovery.

Third, ATG has offered no explanation for its failure to provide a proper damages

calculation at any point in this litigation. To the contrary, ATG continues to argue that its disclosed

damages computation is a proper computation of lost profits damages. It *clearly* is not. As noted

in the procedural history in Part I *supra*, litigation of the damages issue in this case stretches back

to November 2019, when ProActive's motion to strike ATG's damages expert designation was

first granted. Throughout this litigation, ATG maintained that a damages expert was not necessary

for ATG to prove damages in this case.

Of course, it is true that in appropriate circumstances ATG *could* have presented damages

---

Dkt. 102-6. But that vague assertion does not put ProActive on notice of which individuals will testify to damages.

[18] *See* Timothy Hickman Deposition, Dkt. 213-6, at 32:9-7 ("Q: Do you know what the profit margin was? A: Depended on the line of business. We were cash statement payers and accounted for it on a cash basis. I don't – I don't have the percentage in front of me now."); Adam Newbold Deposition, Dkt. 69-4, 339:13-340:13 (testifying that the damages expert performed the profit margin calculation, not Newbold).

testimony through lay testimony in this case.[19] But here ATG has not met its discovery obligations (i) to provide ProActive with a proper damages computation with supporting documentation as required by Rule 26(a)(1), Fed. R. Civ. P., and (ii) to identify lay witnesses that would testify at trial as to the damages computation provided to ProActive as required by Rule 26(a)(1), Fed. R. Civ. P. Because ATG has not met either Rule 26(a)(1) requirement, ProActive remains in the dark about the specific damages ATG intends to assert at trial. Accordingly, this factor weighs strongly in favor of the exclusion of any damages evidence at trial because ATG has offered no explanation for its failure to meet its requirements under Rule 26(a)(1).

Finally, there is no doubt that lost profits damages evidence is extremely important to ATG's case-in-chief. But the importance of this evidence cuts both ways. ProActive needs this information in order to prepare for trial, and permitting ATG to provide new lost profits damages evidence at this stage of the litigation would significantly prejudice ProActive, as it would require the re-opening of discovery for ProActive to determine the basis for ATG's calculations. As noted, ATG has had plenty of time and numerous opportunities to remedy its failure to provide a damages computation to ProActive, and ATG has not done so. Accordingly, ATG's failure to disclose a proper damages calculation is neither harmless nor substantially justified. Thus, precluding ATG from presenting damages evidence at trial is the appropriate remedy pursuant to Rule 37(c), Fed. R. Civ. P.

In sum, ProActive's motion *in limine* to preclude ATG from introducing any evidence relating to any claimed damages must be granted. ATG is precluded from introducing any evidence

---

[19] Whether ATG actually has sufficient evidence to prove damages without an expert is neither reached nor decided here. It is unnecessary to reach or decide that question because ATG has failed to meet its discovery obligations pursuant to Rule 26(a), Fed. R. Civ. P., for the reasons set forth *infra*.

related to any claimed damages at trial.[20] To conclude otherwise would permit a trial by ambush on damages, a result the Federal Rules of Civil Procedure are designed to prevent. Although ATG is precluded from introducing damages evidence at trial, ATG can recover nominal damages if ATG proves it is entitled to relief on its breach of contract claim. *See Kerns v. Wells Fargo Bank, N.A.*, 296 Va. 146, 151 (2018) ("In Virginia…in the context of contractual disputes…when 'no evidence is given of any particular amount of loss, [the law] declares the right by awarding what it terms nominal damages.'") (citation omitted).[21]

## III.

Each party has filed a motion *in limine* to preclude the other party's expert testimony. For the reasons that follow, ProActive's motion *in limine* to preclude expert testimony must be granted in part and denied in part and ATG's motion *in limine* to preclude expert testimony must be granted in part and denied in part.

Admission of expert testimony is governed by Rule 702, Fed. R. Evid.[22] Expert testimony

---

[20] This Opinion, which grants ProActive's motion *in limine* to preclude ATG from introducing damages evidence at trial, has a tangential connection to other pending motions in this case that is worth noting. On July 24, 2020, ATG filed a motion for reconsideration of the Magistrate Judge's July 17, 2020 Order granting in part and denying in part ProActive's motion for sanctions. *See* Motion for Reconsideration, Dkt. 308. ProActive's motion for sanctions arose out of ATG's violation of the protective order in this case. The Magistrate Judge's July 17, 2020 Order granted ProActive's motion for sanctions insofar as it ordered (i) that "any individual who improperly received confidential information…must destroy all copies within their possession and certify that such individual has not disclosed such confidential information to any person or party other than its counsel in this case;" (ii) that ATG shall provide such certification to ProActive's counsel within 7 days of the Order; and (iii) that ProActive shall submit a fee petition for its reasonable attorney's fees and costs in bringing the motion. *See* Order on Motion for Sanctions, Dkt. 307, at 12. The Magistrate Judge's July 17, 2020 Order denied ProActive's motion for sanctions with respect to ProActive's request to prohibit ATG from presenting evidence at trial related to the improperly disclosed confidential information, so long as ATG introduced the evidence through ProActive's witness or ATG's own expert. *See id.* This specific conclusion in the Magistrate Judge's July 17, 2020 Order has been rendered moot because ATG is now precluded from presenting any damages evidence at trial for the reasons stated in this Opinion. But the Magistrate Judge's July 17, 2020 Order, and the parties pending motions related to the Magistrate Judge's July 17, 2020 Order, are otherwise unaffected by this Opinion.

[21] *See also Crist v. Metro. Mortg. Fund, Inc.*, 231 Va. 190, 195 (1986) (affirming award of nominal damages in breach of contract case where actual damages could not be established with reasonable certainty).

[22] Rule 702 provides that:

must be reliable and relevant to be admissible. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). With respect to relevance, the expert testimony must "help[] the trier of fact to understand the evidence or to determine a fact in issue." *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (internal citations omitted). With respect to reliability, "the district court must ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Id.* (internal citations omitted). Moreover, under federal law, experts cannot testify as to conclusions of law, and an interpretation of a contract is a conclusion of law. Specifically, the Fourth Circuit has found that whether a party breached a contract, as well as the proper interpretation of a contract, are "question[s] of law,"[23] and an expert cannot give an opinion as to the legal obligations of parties under a contract.[24]

## A.

ProActive's motion *in limine* moves to preclude expert testimony from ATG's rebuttal

---

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702, Fed. R. Evid.

[23] *Forrest Creek Associates, Ltd. v. McLean Sav. And Loan Ass'n*, 831 F.2d 1238 (4th Cir. 1987).

[24] *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 367 (4th Cir. 1986) (holding that an expert cannot give an opinion as to the legal obligations of parties under a contract and stating, "The basis of expert capacity...may be summed up in the term experience. But experience is hardly a qualification for construing a document for its legal effect when there is a knowledgeable gentleman in a robe whose exclusive province it is to instruct the jury on the law.") (citing *Marx & Co., Inc. v. Diner's Club, Inc.*, 550 F.2d 505 (2nd Cir. 1977)).

expert John M. Falk pursuant to Rule 702, Fed. R. Evid, because Falk's expert opinions are (i) irrelevant and inadmissible; (ii) offer impermissible legal opinions in place of expert testimony; (iii) improperly invade the province of the trier of fact; and (iv) exceed the scope of permissible rebuttal opinions in response to ProActive's expert opinions. ATG opposes ProActive's motion *in limine*, arguing that Falk's report is an appropriate rebuttal report that refutes ProActive's expert's opinions and conclusions.

In parts of ATG's rebuttal report, Falk opines on the interpretation of the contract at issue, the MOU, and whether ProActive's conduct constituted a breach of contract. *See* Falk Rebuttal Report, Dkt. 221-1, at ¶¶ 25, 26, 28, 36, and 37. This testimony is improper and thus excluded from trial because experts cannot testify as to conclusions of law. Moreover, Falk speculates as to ProActive's justifications for terminating ATG from the JV elsewhere in his rebuttal report. *See id.* at ¶¶ 23, 24, 29, 31, 34. This testimony is improper and thus excluded from trial because it is pure speculation without any basis in scientific or other expertise.[25] In addition, Falk opines that the JV contract with the government was "highly unusual and rare," but Falk's opinions about the allegedly unusual nature of the JV's government contract are irrelevant to the issue in this case, namely whether ProActive breached the MOU by terminating ATG from the JV. *See id.* at ¶¶ 14, 15, 16, 35. Accordingly, this testimony is excluded from trial because it is clearly irrelevant. Although the majority of Falk's rebuttal report must be excluded pursuant to Rule 702, Fed. R. Evid., some of Falk's testimony is admissible pursuant to Rule 702, namely paragraphs 17-22, 27, 30, 32, and 33. Accordingly, ProActive's motion *in limine* to exclude Falk's expert testimony must be granted in part and denied in part.

---

[25] Although Falk's testimony on ProActive's justifications for terminating ATG may be speculative, testimony from witnesses with firsthand knowledge of ATG's termination may not be speculative.

**B.**

As noted, ATG has filed a motion *in limine* to preclude the expert testimony of ProActive's expert, James A. Hughes, Jr., to the extent that it offers impermissible legal opinions in place of expert testimony. ProActive opposes ATG's motion *in limine*, arguing that Hughes's report provides expert opinions that are admissible pursuant to Rule 702, Fed. R. Evid.

In stark contrast to ATG's rebuttal expert report, the majority of ProActive's expert testimony from James A. Hughes, Jr. is admissible. ATG argues that Hughes' expert report proffers legal conclusions that are inadmissible at trial. But ATG's argument fails because the majority of Hughes' proffered testimony relates to the complex subject of federal government procurement law and its application to the IDIQ government contract awarded to the JV. In this context, the Fourth Circuit has made clear that "when the legal regime is complex and the judge determines that the witness' testimony would be helpful in explaining it to the jury, the testimony may be admitted." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011). This is precisely the situation here. Hughes' testimony will aid the jury in understanding (i) how task orders work in IDIQ government contracts, (ii) the nature of small business set asides in government contracting generally and as related to the JV IDIQ contract, and (iii) the impact of the Limitations on Subcontracting clause on the IDIQ JV contract.

Although the majority of Hughes' report contains admissible testimony to explain the complex federal government contracting regulations applicable to the JV's IDIQ government contract, Hughes also offers opinions on whether the JV's conduct constituted a breach of its contract with the government. *See* Hughes Expert Report, Dkt. 221-3, at ¶¶ 52, 54, and 55. As with Falk's rebuttal report, these specific paragraphs of Hughes' testimony are improper and thus

excluded from trial because experts cannot testify as to conclusions of law.[26] Accordingly, ATG's

motion *in limine* to exclude Hughes' expert testimony will be granted in part and denied in part.

## IV.

ATG has also filed a motion *in limine* to preclude any reliance by ProActive on Virginia's

Business Judgment Rule because (i) Virginia's Business Judgment Rule does not apply to breach

of contract claims and (ii) ProActive failed to plead the affirmative defense of reliance on

Virginia's Business Judgment Rule.[27] ProActive opposes ATG's motion *in limine*, arguing that the

Business Judgment Rule applies to breach of contract actions contesting the expulsion of members

from a joint venture and that ATG was provided adequate notice of ProActive's Business

Judgment Rule defense via ProActive's interrogatory responses in August 2019. Because

Virginia's Business Judgment Rule does not apply to breach of contract claims, ATG's motion *in*

*limine* to preclude any reliance by ProActive on Virginia's Business Judgment Rule must be

granted.

The Virginia Business Judgment Rule, codified as Va. Code § 13.1-1024.1, generally

applies to breach of fiduciary duty claims against the manager of a limited liability company. *See*

Va. Code § 13.1-1024.1; *Flippo v. CSC Assocs. III, L.L.C.*, 262 Va. 48, 56 (2001) (applying

Virginia Business Judgment Rule to breach of fiduciary duty claims). The Virginia statute makes

---

[26] This conclusion is not inconsistent with the January 29, 2020 Order, which found that ProActive's expert "report clearly addresses the applicable law related to government contracting and provides opinions and conclusions based on the contracts at issue in this case." *Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, No. 19-CV-505, 2020 WL 2738381, at *3 (E.D. Va. Jan. 29, 2020). This Opinion merely clarifies that three paragraphs within ProActive's expert's report are impermissible conclusions of law that cannot be introduced at trial whereas the January 29, 2020 Order considered whether ProActive's expert designation should be struck in its entirety.

[27] ATG's motion *in limine* also requests that ProActive be precluded from reliance on the Advice-of-Counsel defense. But it has been made clear in prior filings in this case that ProActive has never asserted the Advice-of-Counsel defense in this case. At the telephonic hearing on the parties' motions *in limine*, ProActive's counsel again made clear that ProActive does not intend to assert the Advice-of-Counsel defense at trial. Accordingly, because the Advice-of-Counsel defense is not at issue in this case, this Opinion only addresses the affirmative defense of Virginia's Business Judgment Rule.

clear by its terms that a manager is required to discharge the manager's duties "in accordance with the manager's good faith business judgment of the best interests of the limited liability company." Va. Code § 13.1-1024.1(A). But ATG does not allege that ProActive breached its fiduciary duty as managing member of the JV by making a bad business judgment. Instead, ATG alleges that ProActive's termination of ATG from the JV was a breach of a written contract, the MOU.

In this respect, it is well-settled that when the terms of a contract are clear and unambiguous, a court is required to construe the terms according to their plain meaning. *See Bridgestone/Firestone v. Prince William Square*, 250 Va. 402, 407 (1995). In the event the contract is unambiguous after examining only the language of the agreement and reading the agreement as a whole, then extrinsic evidence from before or after the agreement's formation must be disregarded. *See Golding v. Floyd*, 261 Va. 190, 192 (2001). In contrast, "an ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time." *Id.* (quoting *Amos v. Coffey*, 228 Va. 88, 92 (1984)). And the Supreme Court of Virginia has made clear that "[t]he construction of an ambiguous contract is a matter submitted to the trier of fact, who must examine the extrinsic evidence to determine the intention of the parties." *See Tuomala v. Regent Univ.*, 252 Va. 368, 374 (1996).

In this case, the central issue is whether ProActive terminated ATG from the JV in accordance with Section 20.0 of the MOU. Section 20.0 of the MOU provides:

> If a Member becomes insolvent, or voluntarily terminates its participation in the JV (solely to the extent permitted herein after contract award and all related protests) or *is terminated from the JV for its breach of this MOU* or the JV governing documents, the remaining Member(s) will be entitled to purchase the terminating Member's interest in the L.L.C. on a basis proportional to their membership interests, for a total price of $1,000.

Memorandum of Understanding, Dkt. 91-4, at 14.

As noted, the MOU does not specify what constitutes a breach of the MOU for the purposes

21

of this termination provision. ProActive argues that ATG breached the MOU by refusing to agree to the proposed terms of a formal written operating agreement for the JV,[28] and therefore, ProActive was permitted to terminate ATG from the JV pursuant to Section 20.0. In response, ATG argues that ATG never breached the MOU, and therefore ProActive was not entitled to terminate ATG from the MOU pursuant to Section 20.0. Because Section 20.0 does not define what constitutes a breach of the MOU for the purposes of termination, what circumstances constitute a breach are ambiguous.[29] This case therefore focuses sharply on the construction of an ambiguous provision of a written contract, and not on a manager's good faith business judgment. Accordingly, whether ATG's pre-termination conduct was a breach of the MOU such that ProActive was authorized to terminate ATG from the JV pursuant to Section 20.0 of the MOU is a question for a jury to determine as the trier of fact.

Seeking to avoid this conclusion, ProActive's counsel argues that the Virginia Business Judgment Rule applies to breach of contract actions. At the telephonic hearing on the parties' motions *in limine*, ProActive's counsel argued that if a defendant allegedly breaches a written contract but asserts that its breach of the written contract was a business judgment, the Virginia Business Judgment Rule protects that decision. ProActive provides no authority for this argument,[30] nor has any authority been found. Simply put, Virginia's Business Judgment Rule

---

[28] Specifically, ProActive claims that ATG was refusing to agree to add Class B Members to the JV and that ATG was insisting on a 50% voting right in the JV. *See* note 11, *supra*.

[29] *See, e.g., Madera v. Bimbo Foods Bakeries Distribution, LLC*, No. 615CV402, 2015 WL 12712308, at *4 (M.D. Fla. Apr. 7, 2015) (holding that a termination provision is ambiguous in a breach of contract action where the contract does not define the event that triggers termination; in *Madera*, the contract term "chronic failure of performance" was not defined); *Monsanto Co. v. Pacificorp*, No. CV 01 607, 2006 WL 1128226, at *12 (D. Idaho Apr. 24, 2006) (finding that the termination provision in the parties' agreement was ambiguous).

[30] In its opposition brief, ProActive cites to *Williams v. 5300 Columbia Pike Corp.*, 901 F. Supp. 208 (E.D. Va. 1995) for the proposition that Virginia's Business Judgment Rule applies to breach of contract actions. ProActive misreads *Williams*, which is both inapposite and distinguishable. In *Williams*, the court found that "[t]he breach of contract claim is essentially identical to the breach of fiduciary duty claim, as it is based on the notion that

does not apply to breach of contract claims, and here, the only remaining claim is breach of contract. To conclude otherwise would permit an L.L.C. manager to commit a breach of any written contract intentionally, so long as the L.L.C. manager reasonably relied on advice that breaching the written contract was in the best interests of the company. Virginia's Business Judgment Rule is not meant to produce such an absurd result.

In sum, ATG does not challenge a discretionary business decision to which the Virginia Business Judgment Rule would apply. Instead, ATG challenges whether the terms of the written contract, the MOU, allowed ProActive to terminate ATG from the JV based on ATG's alleged pre-termination conduct. Accordingly, Virginia's Business Judgment Rule—Va. Code § 13.1-1024.1—is inapplicable here, and accordingly, ATG's motion *in limine* to preclude ProActive's reliance on that defense must be granted.

## V.

Finally, ATG has filed a motion *in limine* to preclude certain testimony from Adam Newbold related to (i) Newbold's prior business, (ii) a dram shop lawsuit against Newbold, (iii) Newbold's financial issues, and (iv) Newbold's tax issues pursuant to Rule 403, Fed. R. Evid. ProActive opposes ATG's motion *in limine*, arguing that evidence of ATG's financial condition and Adam Newbold's post-JV termination financial condition are relevant and essential to proving causation and damages.[31]

At the telephonic hearing on the parties' motions *in limine*, ATG's counsel conceded that

---

shareholders' rights are contractual in nature." *Id.* at 210 n.1. The court in *Williams* thereafter proceeded to address *only* the breach of fiduciary duty claim and applied the business judgment rule to the breach of fiduciary duty claim, which is entirely appropriate. *See id.* at 211. Moreover, *Williams* applied *Delaware's* business judgment rule to the breach of fiduciary duty claim at issue in that case, and therefore *Williams* is also inapposite to the breach of contract situation presented here involving the applicability of *Virginia's* Business Judgment Rule.

[31] But ProActive concedes that evidence related to the dram shop lawsuit filed against Newbold prior to the start of the JV contract is irrelevant and agrees not to introduce the dram shop lawsuit into evidence unless necessary for rebuttal or impeachment.

this motion *in limine* is more appropriately considered at trial. Prior to the presentation of the full

factual context at trial, it is difficult to determine definitively whether certain testimony is relevant.

*See Luce v. United States*, 469 U.S. 38, 41 (1984) ("A reviewing court is handicapped in any effort

to rule on subtle evidentiary questions outside a factual context."); *see also United States v. Verges*,

No. 1:13CR222, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014) (holding that a court considering

a motion *in limine* to exclude evidence on relevance grounds should "reserve judgment until trial

so that the disputed evidence is placed in the appropriate factual context"). Accordingly, ATG's

motion *in limine* to preclude certain testimony from Adam Newbold must be deferred until the

appropriate time at trial.

*   *   *

For the reasons set forth above,

- (1) ProActive's motion *in limine* to preclude ATG from introducing any evidence relating to any claimed damages must be granted.

- (2) ProActive's motion *in limine* to preclude expert testimony from ATG's rebuttal expert John M. Falk must be granted in part and denied in part.

- (3) ATG's motion *in limine* to preclude any reliance by ProActive on the Business Judgment Rule or the Advice-of-Counsel defense must be granted.

- (4) ATG's motion *in limine* to preclude expert testimony from ProActive's expert James A. Hughes, Jr. must be granted in part and denied in part.

- (5) ATG's motion *in limine* to preclude certain testimony from Adam Newbold must be deferred until the appropriate time at trial.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record.

Alexandria, Virginia
August 7, 2020

/s/
T. S. Ellis, III
United States District Judge